IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSICA ROSE, Plaintiff,

v.

THE MUNIRS COMPANY; MOHAMMED MUNIR; IHOP CORPORATION, Defendants.

2:07-cv-00317-GEB-DAD

ORDER

Defendants seek summary adjudication of Plaintiff's following claims: sexual harassment under Title VII and the California Fair Employment and Housing Act ("FEHA"); wrongful constructive discharge in violation of public policy; negligent hiring, supervision, training, and retention; negligence; and punitive damages. Oral argument was heard on October 20, 2008.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DISCUSSION[1]

Plaintiff's claims concern alleged sexual harassment she experienced when she was a waitress at an International House of Pancakes ("IHOP") restaurant in Rocklin, California. Plaintiff began this employment in January 2006. (Separate Statement of Undisputed Facts ("U.F.") ¶ 1.) The IHOP restaurant is owned by Defendant the Munirs Company, which is owned by Defendant Mohammed Munirs and is a franchisee of Defendant IHOP Corporation. (Compl. ¶ 3; Fannin Decl. ¶ 2.)

Defendants argue the harassment about which Plaintiff complains was not "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment," as required for actionable claims, citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). Plaintiff counters with her declaration filed on October 6, 2008, which she submitted as part of her Opposition to Defendants' motion. Plaintiff declares in her October 6 declaration, starting in January 2006, the cooks with whom she worked, Moses Guzman, Sergio Rodriguez, and Herminio Garcia, called her "baby" and "mamasita," which means "little mama" in Spanish, about 3 to 5 times every shift she worked; Plaintiff worked up to 5 shifts per week. (Pl. Decl. ¶¶ 7, 8.) Plaintiff also declares the cooks whistled at her and asked her if she wanted to date or to be their girlfriend, up to three times each week, and stared at her body every shift she worked. (Pl. Decl. ¶ 9.) Plaintiff indicates each cook followed her into a walk-in refrigerator, for the purpose of being close to her in a confined space in which a person

[1] The summary judgment standard is well known and need not be repeated here.

had to "brush past" another in order to get in and out, at least 2 times each week. (Pl. Decl. ¶¶ 9, 14.) Plaintiff also avers in February 2006, Rodriguez "came up behind [her] and grabbed [her] sides and pretended it was a friendly hug"; she told him to stop, but he "gave [her] these hugs at least 3 times." (Pl. Decl. ¶ 18.) Plaintiff further avers "[o]n one occasion, when [Rodriguez] gave [her] a hug, he grabbed [her] hand and then brushed the front of his pants against [her] hand." (Pl. Decl. ¶ 19.) Plaintiff avers "[o]n at least 3 occasions, [Guzman] followed [her] to [her] car after work and asked [her] if [she] wanted to be his girlfriend. [She] said no. Because it was dark after work, [she] was always nervous about him following [her] to [her] car. On one occasion, he was especially aggressive asking [her] about [her] relationship with [her] boyfriend and suggesting [she] should be his girlfriend. He grabbed [her] car door and would not let [her] close it until he finished talking about [her] being his girlfriend." (Pl. Decl. ¶ 20.) Plaintiff further avers the cooks' behavior caused her to "[feel] like [she] could not just concentrate on [her] job" and she "became anxious about having to go into the walk-in refrigerator." (Pl. Decl. ¶¶ 11, 15.)

Plaintiff declares she complained to Vince Cole, her supervisor, about the cooks' behavior "approximately one week after [she] started [her employment] in January 2006." (Pl. Decl. ¶ 7.) She told Cole the cooks were "calling [her] names [such as 'baby'], whistling at [her], asking [her] for dates, staring at [her], following [her]," "bothering [her] and brushing against [her]." (Pl. Decl. ¶¶ 12, 16.) She did not witness Cole take any corrective action against the cooks, and the cooks continued sexually harassing her. (Pl. Decl. ¶ 7, 12, 16.) Plaintiff declares, on one occasion, Cole

walked towards the cooks to tell the cooks to stop their harassing behavior, but he did not confront them and appeared intimidated by them. (Pl. Decl. ¶ 13.) Defendants object to this averment, arguing Plaintiff lacks personal knowledge of what Cole did. (Defs.' Obj to Pl. Decl. Nos. 1-4.) But Defendants have shown that this evidence should not be considered in the light most favorable to Plaintiff's position. Plaintiff quit work on April 8, 2006. (U.F. ¶ 40.)

Defendants counter they took prompt corrective action after receipt of Plaintiff's sexual harassment complaint, have always taken reasonable steps to prevent sexual harassment in the workplace, and that Plaintiff's contrary averments in her October 6 declaration reflect Plaintiff's attempt to create sham issues of fact to defeat their motion. Defendants argue in a conclusory manner that Plaintiff's attempt to create sham issues of fact is evident since certain factual assertions in Plaintiff's October 6 declaration are missing from Plaintiff's earlier verified response to interrogatories.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting [her] prior . . . testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) "'[I]f a party who has been examined at length . . . could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" Id. (citations omitted). However, before this rule applies the movant must provide a record sufficient for "a [judicial] finding of fact" that a contradiction exists. Id. at 267. Here, Defendants have not met this burden. Therefore, genuine issues

of disputed material facts exist on all Plaintiff's claims except for Plaintiff's claim for punitive damages under California law.

Defendants argue none of Plaintiff's supervisors, Cole, Adnan Anwar, or Melissa Fannin, was "an officer, director, or managing agent" of Defendants, as required before Plaintiff could recover punitive damages under California law. Cal. Civ. Code § 3294(b). The California Supreme Court explained in White v. Ultramar, Inc., 21 Cal. 4th 563, 566-67 (1999),

> the Legislature intended that principal liability for punitive damages not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy. Thus, supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents. Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees. In order to demonstrate that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business.

Cole, Anwar, and Fannin each submitted a declaration revealing each of these individuals lacks authority to make decisions that would ultimately affect corporate policies. (Cole Decl. ¶ 2; Anwar Decl. ¶ 2; Fannin Decl. ¶ 2.) Plaintiff counters Fannin is a managing agent since she received Plaintiff's sexual harassment complaint in early April 2006, and "freely exercised discretion in investigating Plaintiff's sexual harassment complaint, such that she could be found by a jury to have determined corporate policy." (Opp'n at 21:1-2.) Plaintiff's argues Fannin "arranged to have Cole work

through Plaintiff's shift to make sure there was no further allegations of harassment"; interviewed Guzman, Rodriguez, and Garcia regarding Plaintiff's allegations; and "suspended Guzman from work pending the outcome of the investigation." (Fannin Decl. ¶¶ 8-12.) However, Plaintiff has not shown that these decisions "determine corporate policy." White, 21 Cal. 4th at 567. Accordingly, Defendants' motion for summary judgment on this claim is granted.

For the reasons stated, Defendants' motion for summary judgment is denied on all Plaintiff's claims except for Plaintiff's claim for punitive damages under California law.

Dated: November 19, 2008

GARLAND E. BURRELL, JR.
United States District Judge